**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**EDWIN JOSE MARRERO,**

     **Plaintiff,**

**vs.**                                  **Case No.  1:17cv136-MW/CAS**

**NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,**

     **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's Title II application for period of disability and Disability Insurance Benefits (DIB) and Title XVI application for Supplemental Security Income (SSI).  After careful consideration of the entire record, it is respectfully recommended that the decision of the Commissioner be affirmed.

## I. Procedural History and Facts

On July 17, 2013, Plaintiff Edwin Jose Marrero filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplement security income.  Tr. 207-10.[1]  Plaintiff alleged disability caused by abdominal pain, sciatic nerve pain, keratoconus, and lower back pain, with an onset date initially alleged to be February 13, 2008.  Tr. 76-77.  The applications were denied on October 1, 2013, and upon reconsideration on January 28, 2014.  Tr. 77-102;153-54. Plaintiff requested a hearing, which was held on March 21, 2016.  Tr. 30-75.  Plaintiff, with counsel, appeared in Gainesville, Florida.  Administrative Law Judge (ALJ) Ken B. Terry presided over the hearing from Jacksonville, Florida.  Charles Kimball Heartsill, an impartial vocational expert, also testified.  At the hearing, Plaintiff, through counsel, amended the onset date to August 14, 2011.[2]  Tr. 34, 76.

At the hearing, Plaintiff, age 43 at the time, testified that his work history included cleaning a cafeteria.  Tr. 37.  He was also a restaurant dishwasher, a delivery driver, restaurant host, restaurant waiter, and

---

[1] Citations to the transcript/administrative record (ECF Nos. 7, 7-1 through 7-11) shall be by the symbol "Tr." followed by a page number that appears in the lower right corner of each page.

[2] Reference was made at the hearing to a prior application but details were not provided, other than the ALJ's statement that the case did not go to a hearing.  Tr. 34.

receiving manager at Sears (unloading trucks and moving merchandise to various places). Tr. 38-43. He testified that he lives in Gainesville in a building where he climbs two flights of stairs to reach his bedroom.[3] Tr. 44.

Plaintiff received his GED in 1988 after having dropped out of school around the eighth grade. Tr. 46. He has received training in health courses for pet stores and had a permit to work with animals. He has "audited" some university courses. He has never had a driver's license and testified that he could not drive due to his eye condition. He said he uses his bicycle "as a walker" and has bags attached to the bicycle in which he carries things. *Id.* He sometimes uses the bus or other public transportation, but it is difficult to take his bicycle on the bus. Tr. 47.

Plaintiff testified that after his onset date of August 14, 2011, he tried to work as a dishwasher but was let go because he could not carry as much weight as was required. Tr. 47-48. He had a workplace injury in 2008 affecting his lower back and abdominal area for which he received workers compensation benefits. Tr. 49.

When asked by the ALJ to explain his "worst problem," Plaintiff said it was his back pain, which is not helped much by his painkillers Nucynta and Gabapentin. *Id.* These painkillers cause him dizziness and drowsiness

---

[3] Plaintiff has from time to time been homeless and living in the woods.

within about 10 to 15 minutes of first taking them, and the side effects

diminish in about four hours, but then it is time to take them again.  Tr. 50.

Plaintiff testified he has constant low back pain, which is exacerbated by

"just doing anything constantly," like sitting or standing for too long.  Tr. 53.

He said he can sit for 15-20 minutes but must keep adjusting his position.

Tr. 54.  He said he can stand for about three or four hours but would have

to move around.  *Id.*  He testified he can walk two or three miles if he uses

his bicycle as a walker and as a shopping cart.  *Id.*  If he does not have his

bicycle with him he takes a cane, which he said was prescribed by a doctor

two or three years earlier.  Tr. 55.

Plaintiff testified his eyesight is not good enough due to keratoconus,[4]

which blurs his vision, for him to obtain a driver's license but he can see

well enough to get around.  *Id.*  He said his keratoconus began in 2005 or

2006 and has progressed.  He worked up until around 2009 or 2010.

Tr. 56.  The ALJ noted that only Exhibit 8F (Tr. 440-47) refers to Plaintiff's

vision.  Tr. 56.  Counsel agreed those were the only medical records

concerning his vision.  Tr. 56-57.

---

[4] Keratoconus, also called conical cornea, occurs when the cornea thins and gradually bulges outward into a cone shape, causing blurred vision and sensitivity to light and glare.  https://www.mayoclinic.org/diseases-conditions/keratoconus/symptoms-causes/syc-20351352?utm (last visited January 29, 2018).

Plaintiff testified that he can lift five to ten pounds before he suffers severe back pain.  Tr. 57-58.  He can carry a gallon milk jug in each hand for a short distance.  *Id.*  He testified that he is able to clean up around the house, wash dishes, cook, and do laundry.  Tr. 59.  He can take care of personal needs like dressing and shaving.  Tr. 61.  As for shopping, he can no longer shop for two weeks' worth of groceries and gets only enough for a day or two.  *Id.*

He goes to the library to read large print books or to get movies. Tr. 58.  When he watches movies, they are not that clear but it is something to keep his mind busy.  Tr. 58-59.  Plaintiff testified that he used to teach juggling, but now gets a friend to take him to watch, although he can still do a little juggling by touch.  He can no longer do tightrope walking, unicycle riding, rock climbing, scuba diving, or parachuting, as he has done in the past.  Tr. 59-60.  Plaintiff testified that he could not return to a dishwashing job because they always require heavier lifting than he can perform, and when he tries to lift even 20 pounds, his back will give out.  Tr. 62.

Plaintiff testified that he had been diagnosed with bipolar disorder, but had not been hospitalized for that.  Tr. 65-66.  He is currently taking Cymbalta and Wellbutrin, but they cause dizziness.  Tr. 66.  He said he saw Janet Humphreys, Ph.D., for a consultative psychological evaluation in

2013.  She told him his brain sometimes goes into "fast forward" to the point where he cannot accomplish a task within a certain time period because, before he completes it, his brain has come up with 10 or 15 other things.  *Id.*  He said his ability to keep up a pace affected his job performance cleaning a cafeteria because he could not move as fast as he needed to in order to get everything done. Tr. 68-69.

The vocational expert was presented with the first hypothetical question predicated on a person of Plaintiff's age, educational background, and past work experience who can lift, carry and push 20 pounds occasionally (up to one third of the day) and 10 pounds frequently (up to two thirds of the day), can sit for four hours at one time, stand and walk two hours at one time in a total of six hours, occasionally climb ladders, stairs and ramps, with frequent balancing and occasional stooping, kneeling, crouching, crawling, with no limitations regarding manipulations, with visual acuity of around 20/60 vision, and no limitations regarding environmental except to avoid concentrated exposure to hazards.  The person described in this hypothetical can perform simple tasks consisting of unskilled work with concentration on those tasks "for a few hour periods" (sic) with normal breaks and requiring no more than occasional interaction with the public, with no limitation regarding co-workers and supervisors.  Tr. 70-71.  The

vocational expert was asked if the person described in this hypothetical could perform the past work of Plaintiff, described as supervisor of janitorial services, kitchen helper, dishwasher, restaurant host, and deliverer of merchandise.  Tr. 69-70.

The vocational expert testified that under this hypothetical, such a person would not be able to do the cited past work.  Tr. 71.  Under this hypothetical, the vocational expert opined that the individual could perform the following representative work in the national economy: route clerk, DOT #222.687-022,[5] light exertion, SVP of 2, with 103,301 jobs nationally and 6,057 regionally (Florida); marker II, DOT #920.687-126, light exertion, SVP of 2, with 73,602 jobs nationally and 1,423 jobs regionally; and blade balancer, DOT #701.687-014, light exertion, SVP of 2, with 9,833 jobs

---

[5] DOT refers to the Dictionary of Occupational Titles (4th Ed., Rev. 1991), published by the United States Department of Labor, which is one of the examples of sources that the ALJ may rely on for job information.  *See* SSR 00-4p; 20 C.F.R. § 404.966(d) and 416.966(d).  The ALJ may also rely on a vocational expert or other specialist.  *See* § 404.966(e).  An SVP (Specific Vocational Preparation) of 1 means "short demonstration only."  Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  An SVP of 2 means "[a]nything beyond short demonstration up to and including 1 month."  *Id.*  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id.*  Unskilled work corresponds to an SVP of 1 and 2.  SSR 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 416.968(a).  Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decisions; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.  SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985).

nationally and 1,565 jobs regionally.  Tr. 71.  A lifting requirement of no more than 15 pounds would affect the jobs stated.  Tr. 72.

When a second hypothetical was presented to the vocational expert assuming an individual who could not perform an eight-hour work day even at sedentary work with no lifting, carrying, pushing or pulling ten pounds occasionally and five pounds frequently and no standing or walking for two hours at one time or six hours in total, no sitting for four hours at one time or eight hours total, the expert testified that these limitations would preclude all work.  Tr. 72.  And if the person were to be off task 20 percent of the work day due to the need to rest, unable to sustain concentration due to visual limitations, headaches, and the need to stop the task, or if the person would miss more than two days of work per month, that person would also be precluded from all work.  *Id.*

### II. Findings of the ALJ

On May 2, 2016, the ALJ issued a decision finding Plaintiff was not disabled and thus not entitled to DIB or SSI.  Tr. 8-29.  The Appeals Council denied Plaintiff's request for review on March 28, 2017.  Tr. 104.  Thus, the decision of the ALJ became the final decision of the Commissioner and is ripe for review.  Accordingly, Plaintiff, represented by

counsel, filed a Complaint for judicial review pursuant to 42 U.S.C.

§§ 1381, et seq., and 42 U.S.C. § 405(g).  *See* ECF No. 1.

The ALJ made the following pertinent findings in the decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.  Tr. 13.

2. The claimant has not engaged in substantial gainful activity since August 14, 2011, the alleged onset date.  *Id.*

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, a history of abdominal pain associated with constipation, keratoconus, bipolar disorder, and anxiety.  Tr. 14.

The ALJ also found that Plaintiff has the non-severe impairment of a history of substance abuse in sustained remission (i.e., cocaine, LSD, and alcohol).  Plaintiff's one-time diagnosis of personality disorder was considered and the ALJ found that there were no medical signs or laboratory findings to substantiate the existence of a medially determinable impairment of a personality disorder during the applicable period.  *Id.*

4. The claimant does not have an impairment or combination of impairments that meets or medically exceeds the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.*

The ALJ noted that no treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairments.  *Id.*  The ALJ found that in activities of daily living, the claimant has mild restriction as evidenced by Plaintiff's testimony that he can ride a bicycle,[6] use public transportation, perform household chores, go to the library, shop, and attend to daily hygiene needs. Tr. 15.  The ALJ found that although Plaintiff has experienced restrictions in social functioning, there was no indication that his symptoms resulted in marked limitations.  Plaintiff's difficulties with

---

[6] Plaintiff testified he uses the bicycle as a "walker" and to transport items. Tr. 46.

concentration due to racing thoughts were not shown by the evidence to impose significant limitation, but the ALJ found "in an abundance of caution" that the Plaintiff experiences moderate restrictions in the area of concentration, persistence, and pace. *Id.* The ALJ found no episodes of decompensation were evidenced in the record. *Id.* The ALJ found that Plaintiff's anxiety condition is not shown in the record to cause marked restriction or result in complete inability to function independently outside the area of one's home. *Id.* at 16.

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant has the ability to lift/carry and push/pull 20 pounds occasionally, and 10 pounds frequently; sit for four hours at a time and a total of eight hours during an eight-hour day, and stand and/or walk for two hours at a time and a total of six hours during an eight-hour day. He has the capacity to occasionally climb ladders, stairs and ramps. He can frequently balance, and occasionally stoop, kneel, crouch, and crawl. He has no limitations regarding manipulation and no communicative limitations, but he is limited to no more than frequent (up to two thirds of the day) near and/or far vision acuity and to positions that require no better than 20/60 corrected bilateral vision. Environmentally, he is precluded from concentrated exposure to hazards (i.e., unprotected heights and dangerous machinery). Mentally, he is precluded from complex tasks, but he is capable of performing simple, routine tasks (i.e., consistent with unskilled work) with concentration on those tasks for two-hour periods, with normal breaks and a lunch. He is limited to work environments with no more than occasional interaction with the general public, but has no limitations regarding co-workers and supervisors. Tr. 16-17.

The AJL noted that during the hearing, Plaintiff testified his most serious symptoms concerned his back, for which he was being treated with medication management that was not completely successful in relieving his symptoms. The ALJ further noted that Plaintiff testified he ascends two flights of stairs to get to his room in the residence where he lives, that he is able to perform normal activities of daily living such as cleaning, cooking, washing dishes, laundry, and shopping. He testified he was still capable of juggling by feel and touch. Tr. 17. The ALJ found that although Plaintiff testified

that he needs either his bicycle or a cane when walking, this is inconsistent with the record which shows he demonstrated normal gait without need of an assistive device.  Tr. 18 (citing exhibits at Tr. 360-422; 430-35; 480-623).

The ALJ noted that during the time Plaintiff was seen by Interventional Medical Associates, he consistently reported low back pain.  A 2012 MRI disclosed L4-L5 central disc herniation with borderline canal stenosis, but no significant foraminal stenosis. Tr. 19.  The ALJ noted that Plaintiff's examinations showed limited lumbar range of motion and lumbar muscle spasms but he consistently demonstrated a full lower extremity range of motion, normal extremities, normal gait, and negative straight leg raises. Tr. 19 (citing exhibit at Tr. 360-424).  Plaintiff consistently rejected interventional options and the records indicated that his symptoms were being somewhat controlled on the conservative medication regimen.[7]  *See id.*  The ALJ found that nothing in the medical records concerning Plaintiff's back condition contradicted his ability to return to work.  Tr. 21.

As to Plaintiff's vision problems, the ALJ explained that he was including visual limitations in the RFC based on the January 2014 medical records of the Florida Ophthalmic Institute, Inc.  Tr. 20. Those records indicate that Plaintiff complained of blurred vision and keratoconus.  Testing demonstrated that Plaintiff had vision of 20/50-1 in his right eye and 20/60-1 in his left eye at a distance of twenty feet and 20/50 in his right eye and 20/50-1 in his left eye at a distance of fourteen inches.  Both corneas had cones and there was apical scarring.  Tr. 20 (citing Ex. 8F (Tr. 443)).  The ALJ noted the examiner found Plaintiff could walk around the office without difficulty but struggled to find a small object that had fallen on the floor.  Tr. 20 (Tr. 444).  The ALJ stated that he had taken these findings into account, as well as Plaintiff's testimony of his normal activities. "Thus, the above noted residual functional capacity findings include limitations to no more than frequent near and frequent far visual acuity with allowance for 20/60 best corrected vision."  Tr. 20.

---

[7] Office notes from November 2013 through December 2015 consistently noted the Plaintiff was stable with current management, and that his lower back pain was generally being managed well with current medications.  *See, e.g.*, Tr. 434, 618, 594,587,575, 565, 555, 538, 529, 519, 510, 502, 493.

The ALJ also gave great weight to the opinion evidence of State agency medical consultant Irene Lipinski, M.D., who opined that Plaintiff's visual acuity was limited to "frequently" based on best corrected distance vision of 20/50-1 for the right eye and 20/60-1 for the left eye and for near acuity, 20/50 for the right eye and 20/50-1 for the left eye.  Tr. 22 (citing record at Tr. 113).  The ALJ noted that the opinion was well supported and not inconsistent with other substantial evidence.  *Id.*

The ALJ found, regarding Plaintiff's mental impairments of bipolar disorder and anxiety, that the legible records from Helping Hands noted that Plaintiff continued to do well on Wellbutrin and Cymbalta medication; and that the records in mid-2013, mid and late 2014, and mid-2015 document that he was cooperative with a friendly attitude, with normal speech, okay mood in 2014 and stable mood in 2015, normal affect, and lineal and logical thought process.  Tr. 21 (citing exhibits at Tr. 448-79; 436-39).  The ALJ addressed the opinions of Janet Humphreys, Ph.D., who gave Plaintiff a psychological evaluation on September 23, 2013.  Tr. 19-20.  Dr. Humphreys diagnosed Plaintiff with bipolar disorder, social anxiety disorder, somatic symptom disorder with persistent thoughts and anxiety, and unspecified personality disorder.  Tr. 427.  The ALJ gave Dr. Humphreys' opinion of personality disorder limited weight as it was not supported elsewhere in the record and her statements were vague.  Tr. 20.  The office notes from that visit indicate that his concentration and immediate memory may impact his ability to carry out complex instructions and his social skills and his ability to perform simple tasks may be affected by mood disorder and anxiety.  Tr. 427. The ALJ found that Dr. Humphreys' opinions were generally consistent with the RFC found by the ALJ.  Tr. 20.

6. The claimant is unable to perform any past relevant work.  Tr. 23.

The ALJ noted that past relevant work was represented by the jobs of supervisor janitorial services, kitchen helper, merchandise deliverer, and restaurant host.  *Id.*  The ALJ found that the demands of these past jobs exceed Plaintiff's residual functional capacity.  *Id.*

7. The claimant was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  *Id.*

8. The claimant has at least a high school education and is able to communicate in English.  *Id.*

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  *Id.*

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform.  *Id.*

The ALJ found based on the vocational expert's testimony, and the residual functional capacity determined by the ALJ, that Plaintiff can perform the representative jobs of routing clerk (clerical), DOT #222.687-022, light, unskilled, SVP of 2, with 6,057 jobs available in the regional economy and 103,301 jobs available in the national economy; marker II (labeler, stamper), DOT #920.687-126, light, unskilled, SVP of 2, with 1,423 jobs available in the regional economy and 73,602 jobs available in the national economy; and blade balancer (agricul. equip.), DOT #701.687-014, light, unskilled, SVP of 2, with 1,565 jobs available in the regional economy and 69,833 jobs available in the national economy.  Tr. 24.

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 14, 2011, through the date of this decision.  *Id.*

Based on these findings, the ALJ found that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act and is not entitled to disability benefits.  Tr. 25.  The ALJ also found that Plaintiff is not disabled under section 1614(a)A(3)(A)[8] of the Social Security Act and is thus not entitled to supplemental security income.  *Id.*

---

[8] Section 1614(a)(3)(A) of the Social Security Act is codified at 42 U.S.C. § 1382c.  *See* Higginbotham v. Barnhart, 163 F. App'x 279, 280 n.1 (5th Cir. 2006).

### III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[9]  The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the

---

[9] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings.  Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986).  Review is deferential, but the reviewing court conducts what has been referred to as "an independent review of the record."  Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212 (2002).  In addition, an individual is entitled to disability insurance benefits if she is under a disability prior to the expiration of his insured status.  *See* 42

U.S.C. § 423(a)(1)(A); Moore, 405 F.3d at 1211; Torres v. Sec'y of Health

& Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v.

Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

Pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v),[10] the Commissioner

analyzes a claim in five steps:

>   1.  Is the individual currently engaged in substantial gainful
>   activity?
>
>   2.  Does the individual have any severe impairments?
>
>   3.  Does the individual have any severe impairments that meet
>   or equal those listed in Appendix 1 of 20 C.F.R. Part 404,
>   Subpart P?
>
>   4.  Does the individual have the residual functional capacity
>   (RFC) to perform work despite limitations and are there any
>   impairments which prevent past relevant work?[11]

---

[10] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (see 20 C.F.R. §§ 404, 416). Therefore, citations herein should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

[11] Residual functional capacity is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of his or her limitations, observations by treating and examining physicians or other persons, and medical records. Id. The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); see Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) (rescinded eff. Mar. 27, 2017) ("The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

    5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work available in significant numbers in the national economy in light of the claimant's RFC, age, education, and work experience.  *See* Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1228-29 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim. *See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211.  The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ.  *See* Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007) (unpublished).

The opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). This is so because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 404.1527(c)(2).[12]  "This requires a relationship of both duration and frequency."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).

---

[12] This provision applies to claims filed before March 27, 2017.  For claims filed after that date, the applicable provision is section 404.1520c, "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."

The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. Phillips, 357 F.3d at 1241. "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor, 786 F.2d at 1053.

The ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supported a contrary finding," the opinion is "conclusory or inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence or is wholly conclusory." Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with

other evidence as to a claimant's impairments.  <u>Wheeler v. Heckler</u>, 784

F.2d 1073, 1075 (11th Cir. 1986).

Some opinions, on issues such as whether the claimant is unable to

work, the claimant's RFC, and the application of vocational factors, "are not

medical opinions, . . . but are, instead, opinions on issues reserved to the

Commissioner because they are administrative findings that are dispositive

of the case; *i.e.*, that would direct the determination or decision of

disability."  20 C.F.R. § 404.1527(d); *see* <u>Bell v. Bowen</u>, 796 F.2d 1350,

1353-54 (11th Cir. 1986).  "[T]reating source opinions on issues reserved to

the Commissioner are never entitled to controlling weight or special

significance."  SSR 96-5p, 1996 SSR LEXIS 2, at *6 (1996) (rescinded eff.

Mar. 27, 2017).

Although physicians' opinions about what a claimant can still do or

the claimant's restrictions are relevant evidence, such opinions are not

determinative because the ALJ has responsibility of assessing the

claimant's RFC.  A treating physician's opinion that a claimant is unable to

work and is necessarily disabled would not be entitled to any special weight

or deference.  The regulations expressly exclude such a disability opinion

from the definition of a medical opinion because it is an issue reserved to

the Commissioner and a medical source is not given "any special

significance" with respect to issues reserved to the Commissioner, such as disability.  20 C.F.R. § 404.1527(d)(1), (3); SSR 96-5p, 1996 SSR LEXIS 2, at *6 (rescinded eff. Mar. 27, 2017).  In <u>Lewis</u>, the court noted "that we are concerned here with the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinion of the legal consequences of his condition.  Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings."  125 F.3d at 1440.

Generally, more weight is given to the opinion of a specialist "about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. § 404.1527(c)(2), (5)[13]; *see also* <u>Benecke v. Barnhart</u>, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (noting that "[s]pecialized knowledge may be particularly important with respect to a disease . . . that is poorly understood within much of the medical community") (<u>Benecke</u> quoted in <u>Somogy v. Comm'r of Soc. Sec.</u>, 366 F. App'x 56, 65 n.13 (11th Cir. 2010) (unpublished)).  Although a claimant may provide a statement containing a treating physician's opinion of his remaining capabilities, the ALJ must evaluate such a statement in light of the other evidence presented and the ALJ must make the ultimate

---

[13] *See* note 12, *supra*.

determination of disability.  20 C.F.R. §§ 404.1512, 404.1513, 404.1527, 404.1545.

### IV. Analysis

Plaintiff's sole point of contention is that the ALJ's findings fail to account for his impaired near vision.  He contends that the substantial evidence objectively establishes that Plaintiff's vision is always blurry because of his keratoconus.  ECF No. 16 at 28.  He cites reports in which he said that it looks like he is looking through water that is moving, nothing has sharp corners, and one color fades into another.  He also cites the ophthalmic examination that determined he has corrected far vision of 20/50 in his right eye and 20/60 in his left eye and corrected near vision of 20/50 in his right eye and 20/50-1 in his left eye.  *Id.*  Plaintiff contends that the ALJ did not understand Plaintiff's vision issues and made a RFC determination, which included reference to his vision limitation, without proper consideration of the effect of Plaintiff's severely impaired near vision on his abilities.  ECF No. 16 at 29-30.  Finally, Plaintiff contends that the hypothetical question presented to the vocational expert at the hearing, which described an individual with "visual acuity around 20-60 vision," did not sufficiently describe the full extent of Plaintiff's vision impairment.  ECF No. 16 at 32.

The Commissioner counters that substantial evidence supports the ALJ's decision, and that the RFC does account for Plaintiff's near vision impairment by limiting Plaintiff to jobs requiring frequent near and frequent far visual acuity[14] no better than 20/60 best corrected bilateral vision.  ECF No. 17 at 5 (citing decision at Tr. 20).  The Commissioner is correct that the ALJ did consider the medical evidence that Plaintiff's corrected vision, at worst, was 20/60 and included that limitation for both near and far visual acuity in the RFC.  Substantial evidence supports this finding.

Trudy K. Ramjattan, M.D., of the Florida Ophthalmic Institute on January 22, 2014, reported after testing that Plaintiff had vision of 20/50-1 in his right eye and 20/60-1 in his left eye at a distance of twenty feet and 20/50 in his right eye and 20/50-1 in his left eye at a distance of fourteen inches.  Tr. 443.  Plaintiff's cone shaped corneas were noted.  Tr. 442. No abnormality in the peripheral field was noted.  Tr. 443.  The office notes state that Plaintiff could walk around the office without difficulty but struggled to find a small object that had fallen on the floor.  Tr. 444. Dr. Ramjattan recommended that Plaintiff needs monitoring corneal

---

[14] "Frequent" is defined as "one third to two thirds of the time."  *See* SSR 83-10, 1983 WL 31251.

hydrops and that his vision may improve with a RGP (rigid gas permeable) contact lens.  Tr. 444.

The ALJ's inclusion in the RFC of the visual acuity limitation to no more than frequent 20/60 near and far corrected vision is supported by the medical records and by the activities of daily life about which Plaintiff testified.  The ALJ noted that even with his vision limitation, Plaintiff could perform his normal activities.  Tr. 20.  These activities included cleaning, cooking, shopping, washing dishes, washing clothes, and going to the library.  The April 14, 2014, progress notes from Helping Hands Clinic note that Plaintiff reported that he "spends time reading."  Tr. 461.  In May 2012, during his visit to Interventional Medical Associates, Plaintiff reported that that his hobby is reading.  Tr. 363.  Evidence of Plaintiff's ability to perform these activities, in combination with medical evidence consistent with an ability to perform light work, is substantial evidence on which the ALJ may rely.  *See, e.g.*, Dyer v. Barnhart, 395 F.3d 1206, 1209 (11th Cir. 2005); Stacy v. Comm'r, Soc. Sec. Admin., 654 F. App'x 1005, 1011 (11th Cir. 2016) (unpublished); 20 C.F.R. 404.1529(c)(3)(i).  The vocational expert's testimony based on this hypothetical containing the visual acuity limitations noted by Dr. Ramjattan also constitutes substantial evidence supporting the

ALJ's decision that Plaintiff's visual limitations do not preclude all substantial gainful activity.  *See* Wilson, 284 F.3d at 1227.

The ALJ proposed Plaintiff's actual visual acuity limitations, as established by medical testing, to the vocational expert in the hypothetical. *See* Taylor v. Astrue, 2012 WL 294532, *7 (D. Md. 2012) (finding ALJ adequately accounted for plaintiff's visual limitations caused by cataracts where visual acuity tests demonstrated corrected vision between 20/50 and 20/70 and ALJ "incorporated a specific visual acuity limitation reflecting these results into his RFC").  Thus, the ALJ did not err in posing the hypothetical.  The hypothetical question presented to the vocational expert was consistent with the credible functional limitations based on the totality of the medical record.

A hypothetical question is not required to include limitations that are not supported by the record or that the ALJ rejected as unsupported.  *See, e.g.*, Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004); Yates v. Comm'r of Soc. Sec., 706 F. App'x 588, 594 (11th Cir. 2017) (unpublished).  A hypothetical need only include the claimant's impairments, not each and every symptom.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1279 (11th Cir. 2007).

Plaintiff has the burden to prove he is disabled. *See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. The responsibility of weighing the medical evidence and resolving any conflicts in the record then rests with the ALJ. *See* Battle, 243 F. App'x at 523. Plaintiff has not demonstrated that the visual acuity limitation cited in the RFC precludes the work that the vocational expert and ALJ found Plaintiff could still perform.[15] Because the ALJ's decision is supported by substantial evidence and correctly followed the law, and because Plaintiff has not carried his burden to show that he is disabled by virtue of his vision limitations, the decision of the ALJ should be affirmed.

## V. Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly followed the law. Accordingly, pursuant to 42 U.S.C § 405(g), it is respectfully

---

[15] Section 404.1581 (20 C.F.R. 404.1581) defines blindness for purposes of disability insurance benefits as 20/200 or less in the better eye with correction. Plaintiff's visual limitations do not approach this threshold. Further, the American Optometric Association defines 20/60 visual acuity as "mild vision loss or near-normal vision." *See* Mosley v. Berryhill, 2017 WL 1153896, *8 (M.D. Tenn. Mar. 28, 2017) (citing American Optometric Association, "Low Vision," available at http://aoa.org/low-vision.xml) (Last visited January 29, 2018).

recommended that the decision of the Commissioner to deny Plaintiff

Marrero's applications for Social Security benefits should be **AFFIRMED.**

**IN CHAMBERS** at Tallahassee, Florida, on January 29, 2018.


**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**